### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF NEW YORK
### SYRACUSE DIVISION

| | | |
|---|---|---|
| Bishme Smith, | ) | |
| Plaintiff(s) | ) | Civil Case No.:  5:24-cv-368 (MAD/ML) |
| vs. | ) | **CIVIL RIGHTS** |
| Teresa Johnson, Michelle Folino, Renee Hall | ) | **COMPLAINT** |
| Stephanie Albert, Holley Davis, Julie Richardson | ) | **PURSUANT TO** |
| | ) | **42 U.S.C. § 1983** |
| Defendant(s) | ) | |

### NON JURY TRIAL DEMANDED

Plaintiff in the above-captioned action alleges as follows:

### JURISDICTION AND VENUE

1. This court has original jurisdiction over plaintiffs claims pursuant to 28 U.S.C. §§ 1331, 1332, and 1367 because the claims and/or causes of action have a question of constitutional law, diversity of citizenship and amount over $75,000, and supplemental jurisdiction over the state claims based on the federal questions of constitutional law by the defendants.

2. Venue is proper in this District and Division under 28 U.S.C. § 1391 because the actions or inactions giving rise to the claims occurred within this District and Division, and regardless of defendants residency in another state, the actions, inactions, or statements were to a third party within the plaintiffs District and Division causing plaintiffs irreparable harm.

## PARTIES

3. Plaintiff Bishme Smith is African American and/or Black with a mental health diagnosis. Since November 30, 2021, Smith and his family had resided at a multi-family dwelling located at 279 State Street Apartment 310 in Watertown, New York.. This dwelling is a HUD multi-family project-based complex  that receives federal funding.

4. Defendant Teresa Johnson is a Caucasian woman, who is the property manager for Black River Apartments or Cold Black River L.P., and worked at 277 State Street Watertown, New York, and was one of the subjects of the claims herein. All defendants will be referred to collectively as "Defendants," when referenced alone, the defendant will be referred to as, "Defendant Johnson".

5. Defendant Michelle Folino is the Senior Vice President of Operations for Preservation Management, Inc., which oversees Black River Apartments or Cold Black River L.P. Ms. Folino's employment and communications took place remotely at the address she works at, 261 Gorham Road in South Portland, Maine and is one of the subjects of the claim herein.  All defendants will be referred to collectively as "Defendants," when referenced alone, the defendant will be referred to as, "Defendant Folino"".

6. Defendant Stephanie Albert is the Vice President of Legal Affairs at the overseeing company Preservation Management, Inc. The address she works at is 261 Gorham Road, in South Portland, Maine and is one of the subjects of the claims herein. All defendants will be referred to collectively as "Defendants," when referenced alone, the defendant will be referred to as, "Defendant Albert".

7. Defendant Holley Davis was an administrative assistant at Black River Apartments or Cold Black River L.P, employed by Preservation Management, Inc., and worked at 277

State Street Watertown, New York, and was one of the subjects of the claims herein. All defendants will be referred to collectively as "Defendants," when referenced alone, the defendant will be referred to as, "Defendant Davis".

8. Defendant Julie Richardson is Defendant Johnson's immediate supervisor and regional manager for Preservation Management Inc, The address she works at is 261 Gorham Road, in South Portland, Maine and one fo the subjects of the claims herein. All defendants will be referred to collectively as "Defendants," when referenced alone, the defendant will be referred to as, "Defendant Richardson."

9. Defendant Renee Hall was a property manager for Maple Courts apartments which is also managed by Preservation Management, Inc., but now works at Black River Apartments property replacing Defendant Johnson at 277 State Street, Watertown, New York and is one of the subjects herein. All defendants will be referred to collectively as "Defendants," when referenced alone, the defendant will be referred to as, "Defendant Hall."

## FACTS

10. First and foremost, the alleged statements herein and described below entail multiple accusations and allegations as well as documents from court proceedings in criminal matters that are dismissed in favor of the Plaintiff. These statements made by Defendants were construed as true and directly resulted in damages ranging from loss of housing and property, to being homeless for more than 6 months. The specific accusations mentioned herein are:

   a. Defendants stated that Plaintiff committed "criminal activity"

   b. Defendants stated that Plaintiff physically attacked another tenant.

    c.  Defendants stated that Plaintiff assaulted another tenant.

    d.  Defendants stated that Plaintiff had a plea agreement to a dismissed court matter,

    e.  Defendants transferred and sent documents or statements by third parties that
alleged conduct by the Plaintiff which was dismissed in a criminal case in favor of
the Plaintiff.

    f.  Defendants reiterated statements made about the Plaintiff by the other tenant
rea=garding private court hearings that were false.

    g.  Defendants transferred and sent documents of a temporary order by city court that
had already been dismissed.

    h.  Defendants conducted personal conversations and emails all to each other and
specifically mentioned below.

11. At the end of November of 2021, Plaintiff Bishme Smith and his family had moved into
Black River Apartments, which is a low income housing complex that is subject to
Federal, State, Local and Government program funded guidelines through HUD.
Defendant Johnson was the manager in charge of the property who has to comply and
enforce rules and regulations regarding their housing property.

12. On or about December 1rst, 2021, the Plaintiff had already begun experiencing issues
requiring management attention  to have corrected and started notifying Defendant
Johnson and/or her assistant to get this done. The problems ranged from not having the
correct mailbox key, which took 3 weeks to repair to rent calculations being incorrect and
more seriously the heat not working for a few days at a time. Heating issues lasted until
the Winter was over in 2022, while other concerns like rent calculations had not been
corrected until the late summer of 2022.

13. As time went on from the end of February, beginning of March 2022, a neighbor moved in directly above Plaintiffs apartment that started to cause conflict in the building, leading to more concerns and problems such as: noise complaints, inhabitable living conditions, animal defecation in the halls and urine all over walkways, and drug activity, which was all reported to Defendant Johnson and her assistant Defendant Holley Davis orally and in emails numerous times with nothing done to rectify.

14. On or about May 29th, 2024, Plaintiff reached out to Defendant Johnson, about the rent and the issues with the neighbor and issues, to which there was no response. Plaintiff subsequently filed a complaint with CGI informing them of the situation to obtain a resolution, which is an agency that helps resolve tenant complaints in Multifamily housing projects.

15. On May 30th, 2022, an incident occurred at apartment 310, Plaintiffs apartment. The neighbor had gone banging on the plaintiffs apartment door threatening and screaming at the Plaintiff in front of his child, blocking their exit of their apartment. Plaintiff feared for himself and his son, and told her to leave or he was calling the police. Plaintiff called 911 and he ended up being charged with harassment. Plaintiff was the only one to call the police and on the printout of the Watertown City Police dispatch, there was only a phone call made by him describing the response as a nuisance, regardless of the neighbors claim of calling herself. The Police Officer knew the other tenant personally and only took her statement of allegations. A week or so later, he was summoned for the complaint of this incident in Court. Immediately following the incident, Plaintiff household contacted Defendant Johnson via email to inform her of the situation and the other tenants pet dog that escalated to this.

16. On June 1rst, 2022, Plaintiff and his wife went down to the management office to meet with Defendant Johnson and her assistant Defendant Davis regarding rent calculations and to sign paperwork. Plaintiff brought up the incident from the prior day and Defendant Johnson stated she was aware and it was a neighbor squabble and it is in police hands and nothing could be done until the case is over.

17. Upon a court appearance at the end of June, 2022, Plaintiff was given a Temporary order of Protection to refrain from the neighbor and set a trial date for the May 30th, 2022 incident in August of 2022. While this case was ongoing the neighbor began to antagonize Plaintiff and his mental health began to decline from constant and excessive harassment by the neighbor. Plaintiff household requested to move to another unit based on his accommodation and was again not being helped with his requests to prevent his disability from getting worse. This was directly requested in emails with Defendant Johnson.

18. Upon multiple requests to move with no solution, at the end of June 29th, 2022, Plaintiff and his wife went down to meet with Defendant Johnson again to sign paperwork, at this point the paperwork was still wrong and the Plaintiff requested Defendant Johnson's Regional manager, Defendant Julie Richardson's contact information due to not being assisted and needing to arrange accommodations for Plaintiffs disability to not have any more of a negative impact from the harassment and instigation. Defendant Johnson had not responded to this request, nor did she provide the requested contact information and rent was still incorrect with no solution as of yet. Plaintiff then contacted CGI again, to make another complaint and request to move, as well as Defendant Richardsons contact

information regarding all of the concerns. Defendant Johnson then informed Plaintiff that her regional manager would be calling.

19. On or about July 6th, 2022, Plaintiff notified Defendant Teresa Johnson and Defendant Davis about video footage, of the tenant stating the day of the incident May 30th, 2022 to a police officer, that she would intentionally make excessive noise after hours to harass the tenants in direct violation of the lease. Plaintiff then requested, for a second time, Julie Richardson's contact information and Plaintiff's wife then spoke with her briefly this same day to attempt to gain a solution to the issues mentioned herein. Defendant Richardson agreed to assist in accommodating Plaintiff and set a date to call the following day to speak with the Plaintiff directly. Defendant Richardson never made contact again.

20. Throughout the remainder of July, 2022, Plaintiff and his family attempted to resolve many concerns with Defendant Johnson; July 13th, July 15th, July 20th, and July 26th, with no favorable outcome and Plaintiff expressed that he felt the situation began to feel like a personal attack based on his race with every issue because Plaintiff knew from other tenants that this was not occurring with them.

21. On July 27th, Plaintiff filed a formal complaint for discrimination with the FHEO, HUD office on the basis of rave, and disability, detailing all issues and hoping this would help get an ultimate solution.

22. In the beginning of August, 2022 there were only two brief interactions with Defendant Johnson and Defendant Davis, regarding requests and/or issues relating to Plaintiff's court trial coming up on August 22nd which were denied. As August continued, on or around August 15th. 2022, Plaintiff and his wife went down to the office to meet with Defendant

Renee Hall (who is a property manager for another complex managed by Preservation Management Inc.) to certify for the final corrections which resulted in a credit on the account for overpayment and to sign renewal paperwork for a second years lease. At this time, nothing was mentioned of Plaintiff's pending case set for trial on August 22nd, 2022 and Plaintiff and his household assumed that at least one issue was resolved and were awaiting for contact back about Plaintiff's request to transfer to another unit due to the situation from May 30th.

23. On or about August 22nd, 2022, Plaintiff obtained a dismissal for the pending criminal incident on May 30th, 2022 and was relieved of all liability of the charge. Plaintiff communicated this information with Defendants on multiple occasions in writing, emails, and orally.

24. On or about September 10th, 2022, Plaintiff received a letter from FHEO HUD confirming receipt of his complaint that was initiated in July and confirming that it was forwarded to respondents including Defendants Richardson, Folino, and Johnson.

25. On or about September 14th, 2022, Plaintiff received a "Notice to Vacate for Periodic Tenants" stating that Plaintiff and his family had to be out by November 30th, 2022. Plaintiff's household immediately sent Defendant Johnson a letter because there is no reason listed on the document and no official grievance process included either. Defendant Johnson responded later that day stating they were not renewing based on a police report and court records that gives them reasonable grounds to believe that Plaintiff violated the lease from the May 30th 2022 incident.

26. After a series of emails between Plaintiff and Defendant Johnson regarding the non-renewal notice and the illegality thereof, Defendant Albert introduces herself and

responds to Plaintiffs emails explaining the Defendants reasoning for pursuing action against Plaintiffs and what information Defendants stand on to support their reasoning. These emails lasted from September 21rst, 2022 to October 27th, 2022. Plaintiff, upon multiple emails, rebutted and provided evidence to support the contrary of their reasoning to no avail. Defendant Albert made it clear that she was continuing to pursue action.

27. Plaintiff continued to reach out to HUD, NYS Division of Human Rights, Local, Federal, amd State agencies and organizations for emergency assistance and resources as the months continued through the end of 2022 due to upcoming eviction proceedings, however each agency continued to refer Plaintiff to the same agencies and organizations over and over again and were in contact with Defendants receiving false information about Plaintiff.

28. Plaintiff and his household eventually were evicted and became homeless for more than 6 months, while seeking housing and stability and losing resources, income, and adequate living environment along the way.

29. Plaintiffs eviction took place after Defendants had already started making defamatory statements. The Eviction proceedings began in the end of August of 2022 and continued to present.

30. Plaintiffs' complaints were still being investigated and continued until the summer of 2023, when determinations for both complaints were received by both agencies of an unfavorable result.

31. Plaintiff became aware in late 2023 to early 2024 by request of information and emails that contained the spread of false allegations and untrue statements on the part of the Defendants to and from the New York State Division of Human Rights investigators

Elena Perlongo, and Chelsea Long; and to and from HUD representatives, for example Joan Pitoscia, Lisa Pugliese, and CGI Federal representatives that were heading complaints.

32. Defendant Folino aided in the transfer of information by forwarding the false statements and documents back in September of 2022 to the beginning of 2023 to and from Joan Pitoscia, a HUD multifamily housing account executive. This included documents that were not accurate and caused adverse determinations by agencies investigating the complaints on behalf of the Plaintiff.

33. Defendant Hall and Defendant Davis both took part in writing information or events that were documented and forwarded to multiple parties and third party agencies that could determine the Plaintiffs future of their living situation. Information provided was defamatory and false that went against the actual true events.

34. Defendant Johnson was the forefront of the said events at the property and continuously took part in speaking to people, third party agencies, government agencies, and other employees within the company to defame the Plaintiff even after being provided authentic documents that went against her version of events

35. Defendant Albert was the spokesperson for all Defendants to multiple third party agencies, including NYS Division of Human Rights and HUD representatives. Specifically, Defendant Albert was interviewed by NYS Division of Human Rights on January 5th, 2023 and made statements directly stating that the Plaintiff assaulted another tenant, and committed criminal activity, even though she was provided with legal documentation otherwise.

## Causes of Action

### Count I

### 42 U.S.C. § 1983

### As to ALL Defendants

36. Plaintiff repeats and realleges each and every allegation set forth above as if fully restated herein.

37. Defendants collectively and separately are employees of a Federally funded housing management company and in their official capacities due to receiving government funds by HUD, Defendants have the independent authority, and in executing that authority given to them by HUD, it appears that the government authorized it, although defendants collectively abused that authority and were acting under the color of law.

38. Defendants further violated Plaintiffs federally protected rights under the 14th and 5th amendment of the Constitution of the United States, which gives Plaintiff the right to be secure in his… house….. against unreasonable search and seizure; and No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United State; nor shall any state deprive any person of life, liberty, or property, without due process of law.

39. Defendants violated the Plaintiffs rights when collectively and together continued to make defamatory statements regarding Plaintiff after repeatedly being informed with evidence of the truth, causing a series of events when acting under the color of law by making these statements to third party agencies mentioned herein, which resulted in the Plaintiffs deprivation of United States constitutional rights.

40. Defendants actions and statements directly resulted in the Plaintiff losing his housing subsidy and further violating his rights to due process, privacy, all of which are guaranteed under the Constitution and no person acting under the color of law may exercise their authority to abuse it to violate a Plaintiff's rights.

## COUNT II

## PRIVACY ACT- IMPROPER DISSEMINATION

### As to ALL Defendants

41. Plaintiff repeats and realleges each and every allegation set forth above as if fully restated herein.

42. Defendants collectively and collaboratively through their actions disseminated information protected by the Privacy Act concerning Plaintiff to each other, as well as third party agencies and representatives, (i.e. Joan pitoscia at HUD, CGI - Della Collier; Chelsea Long - NYS Division of Human Rights; Elena Perlongo - NYS Division of Human Rights) as well as other third party agencies and/or people. The information included, but is not limited to; Police records of statements concerning Plaintiff with allegations, inaccurate and defamatory information revolving around police matters and pending court cases before and after disposition, and documents pertaining to a dismissed court proceeding in favor of the Plaintiff.

43. Defendants knowingly and intentionally continued to construe these documents as true and without written authorization from the Plaintiff, even after being asked to cease and desist the conduct. Disclosure was not permitted by any routine exception.

44. As a result of the Defendants violations of the Privacy Act, Plaintiff has suffered adverse and harmful effects, including but not limited to, emotional distress, mental aguish, loss

of housing, embarrassment and humiliation, and loss of employment and custody of children for a period of time due to homelessness.

45. Prior to the disseminating information and records concerning Plaintiff, the Defendants were given accurate information directly involving a pending and now dismissed and sealed criminal matter. However, Defendants blatantly and intentionally construed and distributed documents that were not complete, accurate, or timely in violation of 5 USC SS 552. Defendants compiled information received from a unreliable source verbally with a promise of more documents that she never provided to the defendants, nevertheless, the defendants continued to believe and disseminate her version despite documentation supplied by the Plaintiff with accurate legal documents concerning Plaintiffs Dismissed criminal charge from the May 30th, 2022 incident, and allegations stated in police reports, and temporary Order of protection. The information and records that were disseminated to unauthorized individuals were irrelevant, false, malicious, and defamatory, incomplete, inaccurate and untimely.

46. Defendants further disseminated records of court proceedings that are legally sealed pursuant to NY CPL 160.55 and 170.55, which demonstrates that no individual other than the Plaintiff may have access to the information from the dismissed matter, and further legally is prohibited from being used in any way against Plaintiff and without Plaintiffs permission. Defendants continued to commit violations of this act willfully, intentionally and knowingly.

## COUNT III

### NYS DEFAMATION PER SE

#### As to ALL Defendants

47. Plaintiff repeats and realleges each and every allegation set forth above as if fully restated herein.

48. Defendants collectively made false statements and aided abetted each other in the transfer and forwarding of statements and/or allegations about Plaintiff during the course of a time period beginning in July of 2022 and continuing until present time 2024.

49. Specifically stated below are statements, emails, and document references that were communicated to each other for further forwarding to third party agencies.

    a.  The first statement was from Defendant Johnson to Defendant Richardson in an email stating "Bishme (plaintiff) was arrested and charged...... I attached the police report".

    b.  The second statement made on September 8th, 2022 from Defendant Johnson to Defendant Richardson via email, stating, "Ms. Cannon came in after the court date was scheduled for Trial August 16th, 2022. She stated she had a temporary order of protection against Mr. Smith and that the order would be made permanent. She stated that Mr. Smith took a plea deal and is doing community service and the trial was canceled. Once she receives the permanent order she will bring a copy to our office." as well as attaching a police report.

    c.  Third - Defendant Johnson to Defendant Richardson & Defendant Folino, September 30th, 2022: "Julie, Here is the police report and order of protection from the incident. I do not have a copy of the disposition from the court."

    d.  Defendant Folino forwards the above statement and documents to Joan Pitoscia, a HUD representative conducting investigations on Plaintiffs complaints, via email stating: " Hi there, This is the police documents you requested."

e. Defendant Richardson emailed a third party investigator from CGI Federal Della
Collier, on October 18th, 2022, stating: "Attached is the notice of non-renewal for
this resident. IF they do not move, then an eviction would be filed. This
non-renewal was given to the residents letting them know we would not be
renewing their lease. The notice of non-renewal was given due to Bishme Smith
physically attacking another resident." The CGI investigator Miss Collier
responded the same day asking : " is there any documentation regarding the
attack?" Defendant Richardson responded the same day at 3:55 PM stating:
"there is and I think the residents are calling in several times to you guys because
I have several different reps with CGI and HUD that I am sending the same
information to. Do you want me to forward over to you what I sent HUD this
morning the police report and more info is on that email."

f. On September 30, 2022, HUD representative responded to Defendant Folino's
email mentioned in "c and d" above stating: "Hi Everyone: I've received your
attachment of the police report and order of protection. Thank you. Looking
forward to receiving your summary of the situation including the eviction. Thank
you!" which was sent to Defendant Folino, Johnson, & Richardson. Joan Pitoscia
then emailed again on October 11th, 2022 to Defendants Johnson, Folino,
Richardon stating: "Thank you again for meeting with us last week on this
resident complaint and providing the police report and the temporary restraining
order. I am completing the review and require some further details, information
and agent summaries to formally respond to this tenant. Kindly summarize your
comments for the following:  Resident complaint of lack of heat and hot water
Status of criminal summons/complaint against Bishme Smith re: the incident on
5/30/22. Is it pending, dismissed, or other?  Current status of the eviction

proceedings  Any other information you think is relevant to the review PMI 00053 33 Please provide us the following documents:  Lease Violation Notice, including date delivered to resident  Eviction Filing, including date entered  Copy of the lease and house rules indicating the terms that were violated  Any management incident reports documenting the encounters of these residents  Bishme and Paris Smith Move-in Date  Any other information you think is relevant to the review Thank you again for your help in this complaint review. Please provide the above requested items by COB on October 12, 2022. Please feel free to contact me with any questions." this prompted a series of emails between all defendants collectively:

i.  Defendant Richardson forwards the requests to Defendants Davis, Hall, and Johnson for help in filling out this information to which was filled with fictional allegations and the end result of the series of emails that all four defendants collectively and together collaborated responses was sent to Joan Pitoscia.

ii.  The email responding to Koan Pitoscia was sent by Defendant Richardson on or about October 19th, 2022 and forwarded to Ms. Collier at CGI stating :"Hi Joan, In yellow below is the info you were wanting. I have also attached the documents you requested. If you need anything else please let me know. Thank you  Resident complaint of lack of heat and hot water – Teresa called the resident, Bishme on 9/28/22 before sending maintenance over to look at heat and hot water, Bishme told Teresa that maintenance was not allowed in the apt without him there and that he never asked for the heat or hot water to be looked at. Teresa said she received an email from CGI about the issues. Bishme hung up on Teresa. Later, that same day Paris emailed and told Teresa to forward her

the email from CGI. Teresa did not forward the email but did forward the contact for the CGI person to Paris. Status of criminal summons/complaint against Bishme Smith re: the incident on 5/30/22. Is it pending, dismissed, other? The protective order was dismissed and a plea deal was done with the DA office , August 22, 2022. As long as Bishme, for a certain amount of time, Release date of 2/21/2023, and does not get into trouble this will be discharged completely. Current status of the eviction proceedings – Bishme and Paris were sent to our attorney on August 31, 2022. Our regular attorney emailed and had a conflict of interest. The file was then sent to our alternative attorney on September 8, 2022. On September 12, 2022, received confirmation he would start the eviction procedure. Papers were served to Mr. and Mrs. Smith on September 14, 2022. Our attorney has spoken to Mr. Smith's attorney and the case is ongoing.  Any other information you think is relevant to the review

Lease Violation Notice, including date delivered to resident –A violation was not written for this incident. A notice of non renewal was given to the residents. If they do not move out for the non renewal then an actual eviction will be filed. Eviction Filing, including date entered – September 14, 2022 Copy of the lease and house rules indicating the terms that were violated – Sec. 13(c). "The tenant agrees not to...engage in or permit unlawful activities in the unit, in the common areas or on the project grounds." And Sec 23(c)(6). The landlord may terminate the lease for "criminal activity by a tenant...that threatens the health , safety or right to peaceful enjoyment of the premises by other residents." Only scan part of lease and or house rules he violated.  Any management incident

reports documenting the encounters of these residents – NONE  Bishme and Paris Smith Move-in Date – 11/30/2021  Any other information you think is relevant to the review.". This email had attachments of Plaintiffs court disposition, a police report, police calls and an order of protection.

g.  Defendant Albert specifically made statements on her own to third party investigators from the NYS Division of human rights in interviews on January 5th, 2023 stating: "Respondents strictly enforce the terms of tenant leases and will be removing complainant for assaulting another tenant."

h.  Defendant Albert formally sent letters to NYS Division of Human Rights on November 4th, December 9th and December 10th, 2022 repeatedly stating that Plaintiff committed acts of criminal activity by the May 30th incident mentioned herein.

50. Defendants all collectively made false statements and transferred information to each other and third parties while knowing it was false and without the Plaintiffs permission and while having already been provided verified documentation that the allegations were false in a court of law making them defamatory.

51. Defendants' statements were negligent when making them, and is contradicted by prior communications between Plaintiff and Defendants more than 5 times during the course of September 2022 to May of 2023, and they continued.

52. Defendants statements were then published by third parties in investigative reports causing special damages, making the plaintiff lose his housing subsidy, causing homelessness for more than 6 months, causing the loss of custodial children, the loss of opportunities and jobs due to the allegations and were all false.

53. Based on the foregoing provisions the defendants collective statements and collaborations constitute defamation per se.

## COUNT IV

## NYS Defamation

### As to ALL Defendants

54. Plaintiff repeats and realleges each and every allegation set forth above as if fully restated herein.

55. Defendants collectively and collaboratively transferred and communicated false statements and documents as true to multiple parties, specifically the ones herein are Joan Pitoscia a HUD representative, Della Collier a CGI Representative and NYS Division of Human Rights alleging that Plaintiff committed criminal activity.

56. These statements are false as explained herein.

57. Defendants' statements were knowingly and with disregard and negligence to the truth.

58. Defendants' statements caused special harm as mentioned above.

59. Defendants statements constitute defamation per se and the statements tend to injure Plaintiff with his housing subsidy, living situation and constitutional rights to life, liberty, and freedom and the right to due process, double jeopardy clause and these statements suggested that plaintiff is a criminal but is a upstanding citizen with an associates degree in paralegal studies.

### COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### As to all defendants

60. Plaintiff repeats and realleges each and every allegation set forth above as if fully restated herein.

61. Defendants engaged in extreme and outrageous conduct towards Plaintiff with the intent to cause, or with disregard of a substantial probability of causing, severe emotional distress.

62. Defendants were notified and informed and warned many times in documented communications that the allegations presented and information to their "belief" was false and defendants collectively continued to disregard the truth and state clearly their position would not change.

63. Defendants all conspired and collaborated in their efforts to intentionally harm Plaintiff by eviction processes based on false information.

64. Defendants all collectively wrote defamatory emails, statements, oral statements, and condoned each other and misconstrued information about their wrongful conduct with a gross disregard in laws.

65. Defendants collectively engaged in this conduct even after asking for plaintiffs' side of the story and disregarding it.

66. Defendants further intentionally reported these allegations to third parties in an intentional attempt to illegally conduct eviction proceedings.

67. As a direct result and proximate result of defendants conduct, Plaintiff suffered humiliation,severe emotional distress, mental and physical pain and anguish, amounting to damages to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs' respectfully request that the Court grant the following relief:

a.  A declaratory judgment finding that the actions and inactions of all Defendants violated all causes of action set forth herein.

b. Compensatory damages in the amount of $2 Million dollars to fully compensate the Plaintiff for damages to be proven at trial and for occurrence of events resulting from the actions herein.

c. Punitive damages in an amount that would punish Defendants for the willful, intentional, and unprovoked misconduct and indifference from all Defendants as alleged in this complaint and that would effectively deter the Defendants from future behavior;

d. Reasonable attorney, and/or pro se fees and costs;

e. All other relief deemed just and equitable by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 3/17/2024

Pro Se

Bishme Smith

Address: 10 Centennial Dr Apt B3

Syracuse, NY 13207

Tel: 315-486-8698

Email: bishmesmith58@gmail.com