UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

BISHME SMITH,

                  Plaintiff,

v.                                   5:24-CV-0368
                                   (MAD/ML)
TERESA JOHNSON; MICHELLE
FOLINO; RENEE HALL; STEPHANIE
ALBERT; HOLLEY DAVIS; and
JULIE RICHARDSON,

                  Defendants.

_____

APPEARANCES:                           OF COUNSEL:

BISHME SMITH
  Plaintiff, *Pro Se*
10 Centennial Drive, Apt. B3
Syracuse, New York 13207

MIROSLAV LOVRIC, United States Magistrate Judge

### <u>ORDER and REPORT-RECOMMENDATION</u>

The Clerk has sent a *pro se* complaint together with an application to proceed *in forma pauperis* ("IFP") in the above captioned action filed by Bishme Smith ("Plaintiff") to the Court for review.  (Dkt. Nos. 1, 2.)  For the reasons discussed below, I (1) grant Plaintiff's IFP application (Dkt. No. 2), and (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed with leave to replead.

## I.     BACKGROUND

Plaintiff commenced this action on March 17, 2024, by the filing of a verified Complaint against defendants Teresa Johnson, Michelle Folino, Renee Hall, Stephanie Albert, Holley Davis, and Julie Richardson (collectively "Defendants").  (Dkt. No. 1.)  The allegations set forth in the Complaint are substantially similar to allegations set forth by Plaintiff in another action pending in this district, *Smith v. Davis*, 5:22-CV-1202 (MAD/ML) ("*Smith I*").  (Compare Dkt. No. 1, *with Smith I*, Dkt. Nos. 1, 42.)

In sum, the Complaint alleges that Plaintiff and his family began renting an apartment in Black River Apartments housing complex in November 2021.  (Dkt. No. 1 at ¶ 11.)  The Complaint alleges that Defendant Johnson was the manager of the property and beginning on December 1, 2021, Plaintiff experienced issues with the property "rang[ing] from not having the correct mailbox key . . . to rent calculations being incorrect and . . . heat not working for a few days at a time."  (Dkt. No. 1 at ¶ 12.)  The Complaint alleges that Plaintiff attempted to rectify the issues by contacting Defendants, but the issues were either not resolved or not resolved in a timely fashion.  (Dkt. No. 1 at ¶¶ 19-20; *see generally* Dkt. No. 1.)

The Complaint alleges that a new tenant moved into the apartment above Plaintiff's at the end of February/beginning of March 2022, and conflicts between Plaintiff and the new tenant began.  (*Id*. at ¶ 13.)  The Complaint alleges that Plaintiff attempted to contact Defendants regarding the conflicts with the new tenant but did not receive a response.  (*Id*. at ¶ 14.)

The Complaint alleges that on May 30, 2022, an incident occurred at Plaintiff's apartment between Plaintiff and the new tenant that resulted in Plaintiff calling the police and Plaintiff being charged with the criminal violation of harassment.  (*Id*. at ¶ 15.)

The Complaint alleges that Plaintiff requested to move to another unit because the close geographic proximity to the new tenant was causing a decline in his mental health but that Defendants did not provide that accommodation.  (Dkt. No. 1 at ¶¶ 17-18.)

The Complaint alleges that on July 27 (of an unspecified year), Plaintiff filed a formal complaint for discrimination with FHEO, HUD on the basis of race and disability.  (Dkt. No. 1 at ¶ 21.)

The Complaint alleges that on August 22, 2022, the criminal violation of harassment was dismissed against Plaintiff.  (Dkt. No. 1 at ¶ 23.)  Plaintiff alleges that he shared news of the dismissal and documents reflecting the same with Defendants.  (*Id*.)

The Complaint alleges that on September 10, 2022, Plaintiff received a letter from FHEO HUD confirming receipt of his complaint and confirming that the complaint had been forwarded to Defendants.  (Dkt. No. 1 at ¶ 24.)  The Complaint alleges that on September 14, 2022, Plaintiff received a "Notice to Vacate" stating that Plaintiff and his family must vacate their apartment by November 30, 2022.  (*Id*. at ¶ 25.)

The Complaint alleges that Plaintiff and Defendants exchanged a series of correspondence regarding the basis for the eviction and that Plaintiff provided documents rebutting Defendants' proffered reason.  (Dkt. No. 1 at ¶ 26.)  Plaintiff alleges that his family was ultimately evicted and homeless for six months because Defendants provided false information to assistive agencies and organizations that Plaintiff was attempting to work with.  (*Id*. at ¶¶ 27-35.)

Based on these factual allegations, the Complaint appears to allege the following five claims: (1) a claim pursuant to 42 U.S.C. § 1983 against Defendants; (2) a claim that Defendants improperly disseminated information protected by the Privacy Act; (3) a claim of defamation *per*

*se* against Defendants; (4) a claim of defamation against Defendants; and (5) a claim of intentional infliction of emotional distress.  (Dkt. No. 1 at 11-20.)  As relief, Plaintiff seeks compensatory damages in the amount of $2,000,000, punitive damages, reasonable attorney fees, and other relief deemed just and equitable by the Court.  (Dkt. No. 1 at 20-21.)

Plaintiff also seeks leave to proceed IFP.

## II.     PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[1]  After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[2]

## III.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

---

[1]     The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[2]     Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that it be dismissed for failure to state a claim upon which relief may be granted.

### A.    Claims Pursuant to 42 U.S.C. § 1983

To the extent that Plaintiff attempts to assert any constitutional claims, the Court construes those claims as made pursuant to 42 U.S.C. § 1983.  "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action."  *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (internal

quotation marks omitted).  "A plaintiff pressing a claim of [a] violation of his constitutional

rights under § 1983 is thus required to show state action."  *Fabrikant*, 691 F.3d at 206 (internal

quotation marks omitted).  "State action requires *both* . . . the exercise of some right or privilege

created by the State . . . *and*" the involvement of "a person who may fairly be said to be a state

actor."  *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (internal

quotation marks and brackets omitted).

There is no single test that is determinative of whether a private person or entity may be a

state actor, but rather a host of factors.  *Baum. N. Dutchess Hosp.*, 764 F. Supp. 2d 410, 428

(N.D.N.Y. 2011) (Treece, M.J.).  A state actor may be found when: (1) "[the challenged activity]

results from the State's exercise of coercive powers"; (2) "the State provides significant

encouragement, either overt or covert . . . or when a private actor operates as a willful participant

in joint activity with the State or its agents"; (3) "it is controlled by an agency of the State;" (4)

"it has been delegated a public function by the State [known as the public function test]"; or (5)

"it is entwined with governmental policies or when government is entwined in its management or

control[.]"  *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296

(2001) (citations, quotation marks, and alterations omitted).[3]

Here, Defendants ostensibly are private actors.  However, in the interest of reading

Plaintiff's Complaint "liberally and interpreted to raise the strongest arguments that [it can]

---

[3]     On occasion, these criteria have been stated differently but the impact remains the same:

> The conduct of private actors can be attributed to the State for [§ 1983]
> purposes if (1) the State compelled the conduct, (2) there is a sufficiently
> close nexus between the State and the private conduct, or (3) the private
> conduct consisted of activity that has traditionally been the exclusive
> prerogative of the State.

*Hogan v. A.O. Fox Mem'l Hosp.,* 346 F. App'x 627, 629 (2d Cir. 2009) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008)).

suggest," *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013), the Court considers whether

Defendants' alleged activities establish "such a 'close nexus between the State and the

challenged action' that seemingly private behavior 'may be treated as that of the State itself.'"

*Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (quoting *Brentwood*

*Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

 The only nexus between Defendants and the government is the allegation in the

Complaint that

> Defendants collectively and separately are employees of a Federally
> funded housing management company and in their official capacities due
> to receiving government funds by HUD, Defendants have the independent
> authority, and in executing that authority given to them by HUD, it
> appears that the government authorized it, although defendants
> collectively abused that authority and were acting under the color of law.

(Dkt. No. 1 at ¶ 37.)  Courts in this Circuit have held that receipt of federal funds and being

subject to HUD regulations are insufficient to "even approach the close nexus test."  *Hylton v.*

*RY Mgmt.*, 05-CV-6710, 2006 WL 2088196, at *4 (S.D.N.Y. July 25, 2006); *see Miller v.*

*Hartwood Apartments, Ltd.*, 689 F.2d 1239, 1243 (5th Cir. 1982) ("[L]essors in Section 8 new

construction housing programs act as private parties."); *Bowman v. Mitchell*, 10-CV-0005, 2010

WL 1529473, at *2 (W.D. Ky. Apr. 14, 2010) ("The fact that Defendants work for and live in a

property that is regulated by HUD is not enough to transform them into state actors.").

 As a result, I recommend that Plaintiff's claims pursuant to 42 U.S.C. § 1983 against

Defendants be dismissed because they are not state actors.

**B.** **Claims Pursuant to the Privacy Act**

 The Complaint asserts claims pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a,

which allows individuals to request access to federal agency records about themselves.  *Devine v.*

*United States*, 202 F.3d 547, 550 (2d Cir. 2000).  The Privacy Act also allows an individual to

bring a civil suit against a federal agency that "fails to comply" with the statute such that the individual suffers an adverse effect. *Devine*, 202 F.3d at 550-51 (quoting 5 U.S.C. § 552a(g)(1)(D)). The statute does not permit such claims against a private entity, *Pennyfeather v. Tessler*, 431 F.3d 54, 56 (2d Cir. 2005) (citation omitted), or against individual federal employees, *Mamarella v. Cnty. of Westchester*, 898 F. Supp. 236, 238 (S.D.N.Y. 1995) (noting that "the plain language of [the Privacy Act] provides that only 'agencies' are subject to the [statute]," not individuals).

Therefore, I recommend that Plaintiff's claims under 5 U.S.C. § 552a be dismissed against Defendants—who are private individuals—for failure to state a claim upon which relief may be granted. *See Razzoli v. Richmond Univ. Med. Ctr.*, 23-CV-6697, 2023 WL 7017105, at *4 (E.D.N.Y. Oct. 25, 2023) (dismissing the plaintiff's Privacy Act claims where there was not an agency named as a defendant).

### C.     State Law Claims

Having found that all of Plaintiff's federal claims are subject to dismissal, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (holding that "federal courts, absent exceptional circumstances,

should abstain from exercising pendent jurisdiction when federal claims in a case can be

disposed of by summary judgment") (citing *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180

(1974)).

Accordingly, I recommend that Plaintiff's state law claims against Defendants be

dismissed.

## V.     OPPORTUNITY TO REPLEAD

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se*

litigant without granting leave to replead at least once "when a liberal reading of the complaint

gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05

(2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when

justice so requires.").  An opportunity to replead is not required, however, where "the problem

with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."

*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding

L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact

sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated

differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is

not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1

(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[4]

---

[4]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be
successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

Out of deference to Plaintiff's *pro se* status, I recommend that he be permitted to amend his Complaint.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'"  *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD**

Plaintiff's Complaint (Dkt. No. 1), because it fails to state a claim upon which relief may be

granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this report and

recommendation on the docket of this case and serve a copy upon the parties in accordance with

the local rules.[5]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within

which to file written objections to the foregoing report.[6]  Such objections shall be filed with the

Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013);

Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: June 14 , 2024
      Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[5]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[6]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2006 WL 2088196
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Gina HYLTON, Plaintiff,

v.

RY MANAGEMENT, River Park Associates,
Bernard Young, a Contract Arbitrator, and Service
Employees International Union, Local 32BJ, Defendants.

No. 05 CV 6710(GBD).
|
July 25, 2006.

*MEMORANDUM DECISION AND ORDER*

DANIELS, J.

**\*1** On March 11, 2005, *pro se* plaintiff Gina Hylton filed a complaint in the Supreme Court of the State of New York against her union, Service Employees International Union, Local 32BJ ("Local 32BJ"), her former employers, RY Management and River Park Associates ("River Park"), and Bernard Young, a contract arbitrator. [1] Pursuant to 29 U.S.C. §§ 1441 and 1446, the matter was removed to this Court.

Plaintiff alleges that River Park and Local 32BJ conducted unfair labor practices by engaging in a "secret and unlawful collaboration" to make it "markedly difficult" for plaintiff to carry out her bargaining duties as shop steward. Plaintiff further alleges that defendants collaborated to arbitrarily terminate her employment in breach of their collective bargaining agreement. Plaintiff also alleges that Local 32BJ failed to subpoena key witnesses at plaintiff's arbitration proceeding in breach of its duty of fair representation under the collective bargaining agreement. Plaintiff alleges that "although [her] dues were always current, she was prevented from using the medical services provided by the insurance coverage of [her union]." Plaintiff makes numerous state and federal statutory claims, as well as tort and constitutional claims. Plaintiff also claims intentional infliction of emotional distress.

Defendants move to dismiss plaintiff's claims, pursuant to Fed.R.Civ.P. 12(b)(6). Defendants argue that the complaint is time-barred. Defendants further argue that the complaint does not meet the pleading requirements of Rule 8(a). Defendants' motions to dismiss are granted.

Plaintiff worked as a dispatcher and porter for approximately eight years at the River Park Towers, a federally subsidized housing development located in Bronx, New York.. Defendant River Park owns River Park Towers. Plaintiff was initially hired in the management office of River Park to perform dispatcher and clerical duties. In 1993, plaintiff was transferred to the maintenance office, where she worked as a porter.

Plaintiff was a rank and file member of Local 32BJ. In 2000, plaintiff was elected by her fellow workers as "Shop Steward," the union-sanctioned representative of her fellow employees. Plaintiff alleges that the service she performed for union constituents caused defendants to conspire against her. Plaintiff further alleges that RY Management had a practice of intentionally purchasing inadequate cleaning supplies, then blaming workers for not satisfactorily performing their janitorial duties.

Plaintiff alleges that after she was elected Shop Steward, she was summarily removed from the Maintenance office. Plaintiff further alleges that she was assigned to work by herself on the outside grounds, stairways, and roof of River Park Towers. Plaintiff alleges that she was not given any orientation or training to perform the janitorial work in a proper and safe manner.

On March 11, 2002, River Park terminated plaintiff's employment, citing numerous work deficiencies including failure to complete assigned work, failure to follow the orders of management, and other personal misconduct. In April, 2002, Local 32BJ filed a complaint against River Park on plaintiffs' behalf alleging that she was discharged in contravention of the union's collective bargaining agreement. Plaintiff claims that she was suspended, and later terminated, because of false charges filed by RY Management. RY Management charged that plaintiff used a vacant apartment room for her personal use. An arbitration hearing was held on November 8, 2002. Plaintiff alleges that legal counsel for the union did not subpoena key witnesses to testify on plaintiff's behalf. On December 10, 2002, the arbitrator concluded that the plaintiff had been "discharged for just cause."

**\*2** A motion to dismiss pursuant to Fed.R.Civ.P. 12(b) (6) will be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her]

claim which would entitle [her] to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In assessing the sufficiency of a pleading, factual allegations in the complaint must be taken as true and reasonable inferences must be construed in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Since plaintiff is proceeding *pro se,* the pleadings of the amended complaint are to be liberally construed and interpreted in such a manner as to raise the strongest argument they suggest. *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). This is particularly applicable with regard to a *pro se* complaint asserting civil rights violations. *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003). In discrimination cases, the pleading requirements " 'are very lenient, even *de minimis.*' " *Id.* (quoting *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 710 (2d Cir.1998)). Accordingly, plaintiff's amended complaint will be held to " 'less stringent standards than formal pleadings drafted by lawyers,' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." ' *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)).

*Unfair Labor Practice Claim*
Sections 7 and 8 of the National Labor Relations Act ("NLRA."), 29 U.S.C. §§ 157-58, govern plaintiff's unfair labor practices claim against the defendant. These claims are subject to the exclusive jurisdiction of the National Labor Relations Board. *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon,* 359 U.S. 236, 245 (1959); *see also Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 108 (1989) (holding that the National Labor Relations Board has exclusive jurisdiction to prevent and remedy unfair labor practices by employers and unions). This Court therefore lacks jurisdiction over this claim. *See Buckley v. American Federation of Television,* 496 F.2d 305, 311-12 (2d Cir.1974). Plaintiff's claim under the NLRA is dismissed.

*Section 401/Fair-Representation Claim*
Plaintiff's claim that she was terminated without just cause in breach of the collective bargaining agreement is governed by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See DelCostello v. Int'l Bd. of Teamsters,* 462 U.S. 151, 164 (1983). Local 32BJ's duty of fair representation is "implied under the scheme of the National Labor Relations Act." *See Delcostello,* 462 U.S. at 164; *Carrion v. Enterprise Ass'n, Metal Trades Branch,* 227 F.3d 29, 33 (2d Cir.2000).

An employee may sue both her former employer and her union in response to the employee's belief that she was not fairly represented at an arbitration hearing. *DelCostello,* 462 U.S. at 164; *Carrion,* 227 F.3d at 33. This type of suit is known as a hybrid Section 301/fair-representation claim because it alleges that (1) the employer breached the labor contract and that (2) the union breached its duty of fair representation. *DelCostello,* 462 U.S. at 164-65; *Carrion,* 227 F.3d at 33. A six-month statute of limitations applies to hybrid Section 301/fair-representation claims, which commences when the arbitrator issues the award. *Ghartey v. St. Johns Queens Hosp.,* 869 F.2d 160, 164-66 (2d Cir.1989); *see also Kavowras v. New York Times,* 328 F.3d 50, 56 (2d Cir.2003).

**\*3** The arbitrator issued his decision on December 10, 2002. Under the six-month statute of limitations period, the plaintiff's hybrid Section 301/fair-representation claim and unfair labor practices claim were required to have been filed no later than June 10, 2003. Plaintiff did not file her original complaint until March 11, 2005, nearly two years after the statute of limitations period. Plaintiff's claims are therefore dismissed as time-barred.

*Improper Discipline under the LMRDA.*
Plaintiff claims that she was improperly disciplined under the or Labor Management Reporting and Disclosure Act, or Landrum-Griffin Act ("LMRDA"). Plaintiff has failed to state a cause of action under the LMRDA. The LMRDA states that

> "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined ... by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

29 U.S.C. § 411(a)(5). This provision protects employees against the disciplinary actions of unions; it does not protect employees against the disciplinary actions of employers. *See Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,* 493 U.S. 67, 92 (1989) (holding that the term "discipline" refers to "punishment that a union can impose by virtue of its own authority over its members"); *see also Schermerhorn*

*v. Local 100, Transp. Workers Union,* 91 F.3d 316, 326 (2d Cir.1996) ("discipline" refers only to actions taken by a union to protect the union's interests).

The amended complaint alleges that plaintiff was improperly disciplined when she was suspended, and later terminated, from employment at River Park Towers. Plaintiff does not claim that she was suspended, expelled, or in any way disciplined by her union, Local 32BJ. Plaintiff has not alleged improper disciplinary action on the part of her "labor organization ... or by any officer thereof." Plaintiff's claim under the LMRDA is dismissed.

*Constitutional Claims*
Plaintiff alleges violations of her rights under the Fourteenth Amendment and 42 U.S.C. § 1983 and § 1985. Plaintiff is required to show that she suffered a violation of a constitutional right and that the violation was committed under the color of state law. *See* U.S. Const. amend. XIV; 42 U.S.C. §§ 1983, 1985. Private conduct can be considered state action where "[t]he State has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity." *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725 (1961). When a defendant private entity is subject to government regulation, "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351 (1974). Unless a private entity exercises powers that traditionally belong to the state, the "sufficiently close nexus" test will only be met when a state is deemed responsible for a private decision. *Blum v. Yaretsky,* 457 U.S. 991, 1004-05 (1982).

 **\*4**  The only nexus between River Park and the State of New York is that the building defendants own and manage is a recipient of federal financial assistance. It is also under the regulatory control of the United States Department of Housing and Urban Development (HUD). Such a connection is insufficient to satisfy the "sufficiently close nexus" test. *See Neal v. Martinez,* No. 01 CV. 11587, 2003 WL 260524 (S.D.N.Y. Feb. 5, 2003). In *Neal,* plaintiff tenants sued the owners and managers of a federally-funded and HUD-regulated housing development. After noting that federal funds and HUD regulation constituted the "only connection Plaintiffs make between Defendants and any state actor," the court held that plaintiffs failed "even to approach the close nexus required by *Blum." Id.* at \*2. Plaintiff does not mention

state action in the amended complaint, nor allege any facts constituting state action. *See Schlein v. Milford Hospital, Inc.,* 561 F.2d 427, 428-29 (mere fact that hospital was state-licensed, regulated by the state health department, tax exempt, and empowered by the state to annex contiguous land for expansion was insufficient to find "state action" where state was not shown to have played any part in the formulation or implementation of procedures utilized in denying application for staff privileges). Plaintiff's claims under the Fourteenth Amendment and 42 U.S.C. §§ 1983, 1985 are therefore dismissed.

*Intentional Infliction of Emotional Distress*
Plaintiff accuses Local 32BJ of intentional infliction of emotional distress. Plaintiff alleges that:

> [T]he defendant's negligent actions were intended to inflict emotional stress and severe psychological agony upon the mind and spirit of the plaintiff ... [a]nd the plaintiff did suffer mental anguish and emotional harm upon learning that her union was actively collaborating with the employer, R/Y [sic] Management, in failing to represent the legal and genuine rights and legitimate grievances of a union member, who had paid her dues faithfully for a period of nine years, and had performed her work in a satisfactory manner, but had insisted that the employer and union respect the person and rights of a union member in good standing.

(Am.Compl.¶ 16.)

To support a claim for intentional infliction of emotional distress, under New York law, the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985) (quoting *Fischer v. Maloney,* 43 N.Y.2d, 553, 558, 402 N.Y.S.2d 991, 992-93, 373 N.E.2d 1215, 1217 (N.Y.1978). Moreover, the extreme and outrageous conduct "must be clearly alleged for the pleadings to survive dismissal." *Dillon*

*v. City of New York,* 261 A.D.2d 34, 41, 704 N.Y.S.2d 1, 7-8 (App.Div. 1st Dept.1999). New York courts have been "very strict" in enforcing these elements. *Martin,* 762 F.2d at 220.

**\*5** Plaintiff alleges that Local 32BJ failed to adequately represent her at her arbitration hearing. Inadequate representation of a union member does not approach the threshold for behavior that courts have deemed "outrageous" or "beyond all possible bounds of human decency." *See Gay v. Carlson,* 60 F.3d 83, 89 (2d Cir.1995) (an employee's allegations of conspiracy against his manager and fellow employees "even if done maliciously, simply fails to measure up to what is required to establish [intentional infliction of emotional distress]"). Plaintiff's intentional infliction of emotional distress claim is dismissed.

*Claims against Arbitrator*

Plaintiff alleges misconduct by the arbitrator during the arbitration hearing. Courts have uniformly immunized arbitrators from civil liability for all acts performed in their arbitral capacity. *Austern v. Chi. Bd. of Options Exch.,* 898 F.2d 882, 886 (2d Cir.1990) (holding that arbitrators in contractually agreed upon arbitration proceedings are absolutely immune from liability for all acts within the scope of the arbitral process). Plaintiff's allegations against the arbitrator all relate to alleged misconduct in his arbitral capacity. He is therefore immune from civil liability in this case. Plaintiff's claims against Bernard Young, arbitrator of the November 8, 2002 hearing, are dismissed.

*Remaining Claims*

Plaintiff claims that defendants violated her rights under the Title VII of the Civil Rights Act of 1964, the Equal Employment Act of 1972, the Consolidated Omnibus Budget Reconciliation Act of 1986, and Section 296 of the New York State Human Rights Law. Each of these claims are unsupported by factual allegations in the complaint. "[W]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz,* 85 F.3d 51, 53 (2d. Cir.1996); *see also De Jesus v. Sears. Roebuck and Co.,* 87 F.3d 65, 70 (2d. Cir.1996) (holding that a complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b) (6)). Plaintiff's cannot allege facts to state a claim under these laws.

Plaintiff claims that defendants "negligently failed to take corrective actions with regards to [her] complaints" of

"incessant sexual harassment at the job site." In order for plaintiff to establish a prima facie case under, Title VII of the Civil Rights Act of 1964, the Equal Employment Act of 1972, and the New York State Human Rights Law, she must demonstrate that: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered adverse employment action; and (4) the action occurred under conditions giving rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *see also Demoret v. Zegarelli,* 451 F.3d 140, 153 (2d. Cir.2006) (holding that courts analyze state and federal discrimination claims under the framework of *McDonnell Douglas* ). Plaintiff claims that she made her initial complaint to the vice president of R/Y Management and to her union representative. Plaintiff states that when the "vice president of the union was compelled to intervene," plaintiff was transferred from her desk job, and a few months later, terminated. Plaintiff's conclusory allegations are devoid of any factual assertion of conditions giving rise to an inference of discrimination. Plaintiff's Title VII claim is therefore dismissed.

**\*6** The Consolidated Omnibus Budget Reconciliation Act ("COBRA") provides that, if an employer maintains a group health plan, the plan must provide continuation coverage for employees who would lose coverage because of a qualifying event. The employer or sponsor's only further obligation under COBRA is to notify the administrator of the qualifying event, after which the administrator must give notice under COBRA to the particular beneficiaries of their right to continuation coverage. 29 U.S.C. § 1166. "An employer is under no obligation flowing from COBRA to adopt a group health plan or to maintain one that is in existence." *Local 217 v. MHM, Inc.,* 976 F.2d 805, 809. Plaintiff cannot maintain a claim under COBRA against defendants. Plaintiff alleges that "although [her] dues were always current, she was prevented from using the medical services provided by the insurance coverage of [her union]." The complaint is devoid of any factual allegation regarding a violation of the terms of any group health plan. This claim must also be dismissed.

Defendants' motions to dismiss are granted. This case is dismissed in its entirety.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 2088196

## Footnotes

1       Plaintiff filed an amended complaint with this Court on September 30, 2005.

---

**End of Document**                                             © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 1529473
Only the Westlaw citation is currently available.
United States District Court, W.D. Kentucky,
at Bowling Green.

Vivian Janet BOWMAN, Plaintiff

v.

Jennifer MITCHELL et al., Defendants.

Civil Action No. 1:10CV–5–M.
|
April 14, 2010.

**Attorneys and Law Firms**

Vivian Janet Bowman, Frankfort, KY, pro se.

***MEMORANDUM OPINION***

JOSEPH H. McKINLEY, JR., District Judge.

**\*1** Plaintiff, Vivian Janet Bowman, filed this *pro se* action against Jennifer Mitchell, Micki Piper, and Kathy Bays. Bowman filed her complaint on a general complaint form. In the section of the complaint asking her to state her grounds for filing this case in Federal Court, Bowman states: "Defendants are guilty of violating my rights—U.S. Constitution Civil Rights as a citizen—in U.S. Government Housing and Urban Development—Defendant Micki Piper violently attacked me. Micki Piper is a fat black woman with a hateful vulgar mouth." Bowman indicates that she and all the defendants reside in the same apartment building in Bowling Green, Kentucky. She further explains her claim as follows:

> On Thursday, December 31, 2009, Micki Piper violently attacked me— she gets too close to me she extends her huge arms and hands towards me to strike me, Micki Piper is a large black woman who works in the office with the other Defendants in Bowling Green Towers, a HUD property. This is a malicious and violent 3 women defendants who support each other in their criminal act to violate me. These 3 women abuse white women only. I have not seen them abuse men or black

> women. I have seen these 3 women defendants abuse other white women. I never ever think they wold do crime towards me because I stay away from every person living in Bowling Green Towers just need a place to live.

The Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The duty to be less stringent with *pro se* complaints, however, "does not require [the Court] to conjure up unpled allegations," *McDonald v. Hall,* 610 F.2d 16, 19 (1st Cir.1979) (citation omitted), and the Court is not required to create a claim for a *pro se* plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir.1975). To command otherwise would require the "courts to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir.1985). As a review of the complaint reveals that this Court lacks jurisdiction over the subject matter contained therein, the Court will dismiss the action.

Rule 12(h)(3) of the Federal Rules of Civil Procedure provides, "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." It is axiomatic that federal district courts are courts of limited jurisdiction, and their powers are enumerated in Article III of the Constitution. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Hudson v. Coleman,* 347 F.3d 138, 141 (6th Cir.2003) ( "[I]t is well established that federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute."). "Jurisdiction defines the contours of the authority of courts to hear and decide cases, and, in so doing, it dictates the scope of the judiciary's influence." *Douglas v. E.G. Baldwin & Assocs. Inc.,* 150 F.3d 604, 606 (6th Cir.1998). The party that seeks to invoke a federal district court's jurisdiction bears the burden of establishing the court's authority to hear the case. *Kokkonen,* 511 U.S. at 377. Moreover, federal courts have an independent duty to determine whether they have jurisdiction and to "police the boundaries of their own jurisdiction." *Douglas,* 150 F.3d at 607 (quoting *Ebrahimi*

v. City of Huntsville Bd. of Educ., 114 F.3d 162, 165 (11th Cir.1997)).

**\*2**  In the present case, Bowman has not met her burden of establishing federal question jurisdiction under 28 U.S.C. § 1331. She alleges that her constitutional rights were violated by Defendants whom she identifies as living in and working for a property that receives federal assistance from the United States Department of Housing and Urban Development (HUD). Because Plaintiff references civil rights, the Court believes that she may be attempting to bring a claim under 42 U.S.C. § 1983." "Section 1983 is not itself a source of substantive rights." Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). In order to recover under § 1983, a plaintiff must show the deprivation of a federal right through conduct which is "fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). That is, "the party charged with the deprivation must be a person who ... is a state official, [or who] has acted together with or has obtained significant aid from state officials, or [whose] conduct is otherwise chargeable to the State." Id. The fact that Defendants work for and live in a property that is regulated by HUD is not enough to transform them into state actors. See Miller v. Hartwood Apartments, Ltd., 689 F.2d 1239, 1243 (5th

Cir.1982) ("[L]essors in Section 8 new construction housing programs act as private parties."); Neal v. Martinez, No. 01 Cv. 11587(VM), 2003 U.S. Dist. LEXIS 1672 (S.D.N.Y. Feb. 4, 2003) ("Plaintiffs assert no concrete facts that the state-here the federal government through HUD-exercised any power or influence over Defendants in any way to force or encourage Defendants to act in a manner that violated Plaintiffs' rights under § 1983."); Hylton v. RY Mgmt., No. 05 CV 6710(GBD), 2006 U.S. Dist. LEXIS 51364, 2006 WL 2088196 (S.D.N.Y. July 25, 2006) (same). Thus, Bowman cannot maintain a § 1983 claim against Defendants because they are not state actors.

Additionally, Bowman fails to establish diversity jurisdiction as there is not complete diversity of citizenship. See 28 U.S.C. § 1332. To the contrary, Bowman alleges that she and all of the Defendants are Kentucky citizens.

Accordingly, because Bowman has failed to establish that this Court has subject-matter jurisdiction over this action, the Court will dismiss this action by separate Order.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1529473

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 7017105
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Kevin RAZZOLI, Plaintiff,

v.

RICHMOND UNIVERSITY MED. CENTER,
Dr. Douglas Cohen, Dr. Ami Raval, Med
Tronics Devices, Unknown BOP Staff,
Unknown Medical Staff BOP, Defendants.

23-CV-6697 (AMD) (LB)
|
Signed October 25, 2023

**Attorneys and Law Firms**

Kevin Razzoli, Staten Island, NY, Pro Se.

## ORDER

ANN M. DONNELLY, United States District Judge:

**\*1** On September 12, 2023, the *pro se* plaintiff Kevin Razzoli brought this action against the Richmond University Medical Center, Dr. Douglas Cohen, Dr. Ami Raval, Med Tronics Devices and unknown Bureau of Prisons ("BOP") staff members. (ECF No. 1.) His application to proceed *in forma pauperis* ("IFP") is granted. (ECF No. 8.) As explained below, the action is dismissed in part with prejudice and in part without prejudice.

## BACKGROUND

The complaint, entitled "Federal Malpractice Suit," appears to allege medical malpractice or negligence claims, civil rights claims under 42 U.S.C. § 1983, civil RICO claims under 18 U.S.C. § 1961 et seq., and Privacy Act claims under 5 U.S.C. § 552a against the Richmond University Medical Center ("RUMC"), two individual doctors, a medical device company, and "Unknown BOP Staff." (ECF No. 1 at 1–2.) [1] The plaintiff alleges that he is "disable[d]" due to [the] negligence [of the d]efendants," apparently resulting from surgeries the defendant received in February 2008 and September 2020. (*Id.* at 4.) [2] Specifically, the " 'neuro surgeons' who conducted surgery at RUMC in September[ ]

2020 ... failed to make note of items in the body of [the plaintiff]," and one or multiple of the defendants denied that "anything was left in [the plaintiff] by BOP from a [prior] surgery at Muncey Regional Medical Center" in February 2008. (*Id.*)

The complaint seeks $220 million in damages for the loss of the "right to have children," "[intentional] gross negligence," "falsification of documents that cause cover up ... of acts of genocide," "loss of consortium [and] procreation of children," "pain [and] suffering," "endangering the life of a patient," and "denial of births to an Italian American/Roman Catholic." (*Id.* at 2.)

## LEGAL STANDARD

Because the plaintiff is proceeding *pro se,* the Court construes his submissions liberally and interprets them "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)). A district court may dismiss a *pro se* action *sua sponte*, that is, on its own, if the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "An action is 'frivolous' when (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory," i.e., "the claim lacks an arguable basis in law" or "a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations omitted).

**\*2** A district court may also dismiss a *pro se* action *sua sponte* if the court does not have subject matter jurisdiction over the matter. Fed. R. Civ. P. 12(h)(3). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte.* If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). Federal subject matter jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when the plaintiffs and defendants are of diverse citizenship and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332(a). If a liberal reading of the complaint "gives any indication that a valid claim might be

stated," the Court must grant leave to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## DISCUSSION

### I. Medical Malpractice/Negligence Claims

The plaintiff refers to his complaint as a "federal malpractice suit" (ECF No. 1 at 1) and appears to allege that doctors at RUMC and BOP doctors at Muncey Regional Medical Center committed malpractice when they did not find foreign objects that he believes were left inside his body after two surgeries. (*Id.* at 4.) Reading the pleadings liberally, the Court interprets the complaint to assert a claim of medical malpractice or negligence. "In New York, '[a]n action to recover for personal injuries ... against a medical practitioner or a medical facility or hospital may be based either on negligence principles or on the more particularized medical malpractice standard." *Kushner v. Schervier Nursing Care Ctr.*, No. 05-CV-5297, 2011 U.S. Dist. LEXIS 174391, at *9–10 (S.D.N.Y. Mar. 23, 2011) (quoting *Friedmann v. N.Y. Hosp.-Cornell Med. Ctr.*, 65 A.D.3d 850, 850–51, 884 N.Y.S.2d 733 (1st Dep't 2009)). The distinction between these kinds of claims "is a subtle one, for medical malpractice is but a species of negligence and 'no rigid analytical line separates the two.'" *Weiner v. Lenox Hill Hosp.*, 88 N.Y.2d 784, 787, 650 N.Y.S.2d 629, 673 N.E.2d 914 (1996) (quoting *Scott v. Uljanov*, 74 N.Y.2d 673, 674, 543 N.Y.S.2d 369, 541 N.E.2d 398 (1989)). "A claim sounds in medical malpractice when the challenged conduct 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician,'" *Sha v. Mem'l Sloan-Kettering Cancer Ctr.*, No. 99-CV-3233, 2000 U.S. Dist. LEXIS 17297, at *2 (S.D.N.Y. Nov. 29, 2000) (quoting *Weiner*, 88 N.Y.2d at 788, 650 N.Y.S.2d 629, 673 N.E.2d 914), and sounds in negligence when "the provider failed 'to fulfill a different duty,'" *Gjini v. United States*, No. 16-CV-3707, 2019 U.S. Dist. LEXIS 20978, at *25 (S.D.N.Y. Feb. 8, 2019) (quoting *Dispenzieri v. Hillside Psychiatric Hosp.*, 283 A.D.2d 389, 389, 724 N.Y.S.2d 203 (2d Dep't 2001)).

The Court need not decide whether the plaintiff is bringing medical malpractice or negligence claims because the plaintiff does not establish a basis for this Court's jurisdiction under either theory. Both claims "arise under state law, and a federal court generally will not have original jurisdiction over the claims unless complete diversity exists." *Joseph v. JRF Income Tax Bus. Servs.*, No. 21-CV-3869, 2021 U.S. Dist. LEXIS 150150, at *13 (E.D.N.Y. Aug. 10, 2021) (quoting

*Urena v. Wolfson*, No. 09-CV-1107, 2010 U.S. Dist. LEXIS 128423 at *35 (E.D.N.Y. Dec. 6, 2010)). Here, the parties are not diverse; the plaintiff and the defendants RUMC, the individual doctors, and Med Tronics Devices are all citizens of New York. Therefore, diversity jurisdiction does not exist. *See* 28 U.S.C. § 1332(a)(1). Accordingly, these claims are dismissed for lack of subject matter jurisdiction.

The plaintiff's analogous claim against unidentified BOP officials must be dismissed because "it is clear on the face of the complaint that the statute of limitations has run." *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014) (citation omitted). New York law gives a plaintiff two years and six months to bring a medical malpractice claim and three years to bring a negligence claim. *Idiakheua v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 20-CV-4169, 2022 U.S. Dist. LEXIS 190205, at *50 (E.D.N.Y. Oct. 17, 2022) (citing N.Y. C.P.L.R. §§ 214(5), 214-a). The complaint appears to allege that the plaintiff had surgery in a BOP facility in February 2008. (ECF No. 1 at 4.) The plaintiff did not file the complaint until September 12, 2023 (*see id.* at 1); therefore, these claims are time-barred and must be dismissed.

### II. Civil Rights Claims

**\*3** The plaintiff brings a claim, seemingly against all defendants, under 42 U.S.C. § 1983. To prevail on a Section 1983 claim, the plaintiff must allege that the conduct at issue was "committed by a person acting under color of state law" and "deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Section 1983 does not extend to "private conduct" caused by private individuals or organizations, "no matter how discriminatory or wrongful;" rather, the statute applies only to state actors, and to private actors performing conduct that is "fairly attributable to the state" or engaging in "public functions." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 51, 55, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (citation omitted).

The plaintiff has not alleged that RUMC, the two individual doctors or Med Tronics Devices are state actors. Nor has the plaintiff alleged that the defendants' conduct "may be fairly treated as that of the State itself" or that these defendants "exercised powers that are 'traditionally the exclusive prerogative of the state.'" *Blum v. Yaretsky*, 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (citations omitted). *See, e.g., Cranley v. Nat'l Life Ins. Co.*

*of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003) ("A finding of state action may not be premised solely on the private entity's creation, funding, licensing, or regulation by the government."); *Rendell-Baker v. Kohn*, 457 U.S. 830, 841, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) ("Acts of ... private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State."). Therefore, the plaintiff does not state Section 1983 claims against RUMC, the two individual doctors or Med Tronics Devices, and the claims must be dismissed. *See* 28 U.S.C. § 1915(e)(2)(ii).

The plaintiff's Section 1983 claims against the unidentified BOP officials must also be dismissed because the statute does not extend to conduct by federal officials. *United States v. Acosta*, 502 F.3d 54, 60 (2d Cir. 2007). These claims are also barred by the applicable statute of limitations: a plaintiff bringing a Section 1983 claim in New York State federal court must do so within three years of the date "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Barnes v. City of New York*, 68 F.4th 123, 127 (2d Cir. 2023) (citations omitted). The plaintiff does not allege when he knew or had reason to know of the injury; at most, he alleges that BOP officials violated his constitutional rights in connection with a surgery that took place in 2008. Without more specific allegations, these claims are time-barred, and must be dismissed.

### III. RICO Claims
Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") makes it unlawful to conduct "an enterprise's affairs through a pattern of racketeering activity" and provides a private right of action to any person injured "in business or property" due to such a violation." 18 U.S.C. §§ 1962(c), 1964(c). A plaintiff bringing a civil RICO action must plead two or more predicate acts of "racketeering activity," which may be any of an enumerated list of "act[s] or threat[s]" as defined by the statute. *See id.* § 1961(1), (5).

The complaint cites the RICO statute (ECF No. 1 at 2), but does not allege any predicate acts that may constitute a "pattern of racketeering activity:" medical malpractice and negligence are not listed in the statute as predicate acts. *See* 18 U.S.C. § 1961(1). The complaint also cites 18 U.S.C. § 2340(1), a criminal statute that defines torture, but that statute does not have anything to do with "racketeering

activity" (*id.*). Accordingly, the plaintiff does not state civil RICO claims against any defendant, and the claims must be dismissed.

**\*4** To the extent that the plaintiff's RICO claims against the BOP officials involve the February 2008 surgery, dismissal is required for the additional reason that the statute of limitations has run. Civil RICO claims must be brought within four years of "when the plaintiff discovers or should have discovered the RICO injury." *421-A Tenants Ass'n v. 125 Court St. LLC*, 760 F. App'x 44, 48–49 (2d Cir. 2019) (quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998)). As with the civil rights claims, the plaintiff does not allege when he knew or had reason to know of the injury; he alleges only that the surgery took place in 2008. Without more specific allegations, these claims are time-barred, and must be dismissed.

### IV. Torture Claims
18 U.S.C. § 2340A makes it a crime to "commit[ ] or attempt[ ] to commit torture," or to "conspire[ ] to commit" torture, "outside the United States," and gives federal courts jurisdiction "over [that] activity." 18 U.S.C. § 2340A(a)-(c). The specific statutory provision that the complaint cites, § 2340(1), defines torture as "an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control." (*See* ECF No. 1.) The statute does not provide a private right of action to enforce the law "in any civil proceeding," 18 U.S.C. §§ 2340, 2340B, so the Court must dismiss any such claims. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Sivokonev v. Cuomo*, 447 F. Supp. 3d 58, 63 (W.D.N.Y. 2020).

### V. Privacy Act Claims
The plaintiff also cites the Privacy Act of 1974, 5 U.S.C. § 552a, which allows individuals to request access to federal agency records about themselves. *Devine v. United States*, 202 F.3d 547, 550 (2d Cir. 2000). (*See* ECF No. 1 at 1, 2.) The Privacy Act also allows an individual to bring a civil suit against a federal agency that "fails to comply" with the statute such that the individual suffers an adverse effect. *Devine*, 202 F.3d at 550–51 (quoting 5 U.S.C. § 552a(g)(1) (D)). The statute does not permit such claims against a private entity, *Pennyfeather v. Tessler*, 431 F.3d 54, 56 (2d Cir 2005) (citation omitted), or against individual federal employees, *Mamarella v. Cnty. of Westchester*, 898 F. Supp. 236, 238 (S.D.N.Y. 1995) (noting that "the plain language of [the

Privacy Act] provides that only 'agencies' are subject to the [statute]," not individuals). Therefore, the plaintiff's claims under 5 U.S.C. § 552a are dismissed against all defendants for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## VI. Leave to Amend

Though the plaintiff has not requested leave to amend his complaint, the Court has considered whether he should be given an opportunity to do so. Under Rule 15(a) of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." Pursuant to this liberal standard, I grant the plaintiff leave to amend his complaint as to the civil RICO claims.

The Court declines to grant the plaintiff leave to amend his complaint as to (i) the medical malpractice/negligence claims, (ii) the civil rights claims, (iii) the torture claims, and (iv) the Privacy Act claims because "amendment would be futile." *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016); *Lamb v. Cuomo*, 698 F. App'x 1, 2 (2d Cir. 2017). As to the medical malpractice/negligence claims against RUMC, the individual doctors and Med Tronics Devices, "there is no basis to invoke this Court's subject-matter jurisdiction" because the parties are not diverse. *Gross v. Intratek Comput. Inc.*, No. 22-CV-7440, 2023 U.S. Dist. LEXIS 4356, at *7 (E.D.N.Y. Jan. 10, 2023) (denying leave to amend where parties are not diverse). As to the plaintiff's medical malpractice/negligence claim against the BOP officials, no new allegations can revive the claim because "dismissal is not based upon pleading deficiencies, but rather the applicable statute of limitations." *Apostolidis v. JPMorgan Chase & Co.*, No. 11-CV-5664, 2012 U.S. Dist. LEXIS 157733, at *23 (E.D.N.Y. Nov. 2, 2012). As to the civil rights, torture, and Privacy Act claims, amendment is futile because these claims are not available against the defendants.

## CONCLUSION

**\*5** For these reasons, the plaintiff's RICO claims are dismissed without prejudice. The plaintiff's remaining claims are dismissed with prejudice to filing in federal court; however, any potential state law claims are dismissed without prejudice to filing in state court.

In the amended complaint, the plaintiff must provide the date, location and a short, plain statement of the relevant facts supporting the claim against each defendant. "To establish a claim for a civil violation of section 1962(c)," i.e., "civil RICO," "a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Env. Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 271 (E.D.N.Y. 2014) (quoting *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 404 (S.D.N.Y. 2013)). If the plaintiff's RICO claim is "predicated on acts of fraud," it must satisfy the "heightened pleading requirement set forth in Rule 9(b)" of the Federal Rules of Civil Procedure. *Id.* at 271–72. Rule 9(b) requires the plaintiff to plead "with particularity;" specifically, the complaint must "(1) specify the statements, oral or written, that the plaintiff contends were fraudulent, either as misrepresentations or containing fraudulent omissions; (2) identify the speaker or the writer; (3) state where, when and to whom the statements were made; and (4) explain why the statements were fraudulent." *Id.* at 271 (quoting *SEC v. Lee*, 720 F. Supp. 2d 305, 338 (S.D.N.Y. 2010)). The plaintiff is also cautioned that he must allege facts that are personal to him. If applicable, the plaintiff must provide facts to show why his claims are not time-barred or provide reasons for his failure to timely file the claim(s).

If the plaintiff decides to file an amended complaint, it must be captioned "Amended Complaint" and bear the same docket number as this order: 23-CV-6697 (AMD) (LB). The plaintiff is advised that the amended complaint completely replaces the original complaint. That is, the amended complaint must stand on its own without reference to the original complaint. All further proceedings shall be stayed for 30 days. If the plaintiff fails to file an amended complaint within the time allowed or fails to show good cause for an extension to file the amended complaint, the Clerk of Court shall be directed to enter judgment and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. Therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

## SO ORDERED.

## All Citations

Slip Copy, 2023 WL 7017105

### Footnotes

1    The pages of the complaint are not consecutively paginated. The Court refers to the page numbers assigned by the Electronic Case Filing ("ECF") System.

2    The plaintiff uses varying capitalization throughout the complaint. The Court has modified the quotations from the complaint to employ standard capitalization.

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00368-MAD-ML   Document 6   Filed 06/14/24   Page 24 of 38

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 5:24-cv-00368-MAD-ML   Document 6   Filed 06/14/24   Page 25 of 38

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambery v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 5:24-cv-00368-MAD-ML   Document 6   Filed 06/14/24   Page 26 of 38

no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 5:24-cv-00368-MAD-ML   Document 6   Filed 06/14/24   Page 27 of 38

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.
Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:24-cv-00368-MAD-ML    Document 6    Filed 06/14/24    Page 29 of 38

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

End of Document                                   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-00368-MAD-ML   Document 6   Filed 06/14/24   Page 30 of 38

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of Minnesota and Olmested County Court Systeam, and State of Minnesota, Saint Peter State Hospital, Doctor Gammel Stephelton, et el Erickson, North West Bank and Trust, Olmested County Social Service, J.C. Penny Insurnce, Metmore Finicial, Traveler Insurnce, Comecial Union Insurnce, Hirman Insurnce, Amrican State Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi Insurnce, Steven Youngquist, Kent Chirstain, Micheal Benson, United Airline, Kowate Airline, Fordmotor Cridite, First Bank Rochester, George Restwich, British Airways, Western Union, Prudenial Insurnce, T.C.F. Bank, Judge Sandy Kieth, Judge Niergari, Olmestead County Judgering, Judge Mores, Judge Jacobson, Judge Challien, Judge Collin, Judge Thomase, Judge Buttler, Judge Morke, Judge Moweer, Sera Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.

|

May 23, 1995.

## Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn., St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel, for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon, Michael J. Holland, of counsel, for British Airways, P.L.C. and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths, of counsel, for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A., Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert J. Smith, of counsel, for Travelers Ins. Companies; Hirman Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas N. Kaufmann, of counsel, for American States Ins. Co. and Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F. Larkin, Asst. U. S. Atty., of counsel, for Michael Benson, Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F. Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P, Watertown, NY, George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

## MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

*1 In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte*

Case 5:24-cv-00368-MAD-ML   Document 6   Filed 06/14/24   Page 31 of 38

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy

easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

Case 5:24-cv-00368-MAD-ML    Document 6    Filed 06/14/24    Page 32 of 38

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

The court also has received a total of thirteen motions[4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction.[5]

**\*3**  Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against

them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

## ANALYSIS

### The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank

Case 5:24-cv-00368-MAD-ML   Document 6   Filed 06/14/24   Page 33 of 38

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

II. The Jurisdictional Arguments

 **\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

   A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants

are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

   B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

 **\*5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of

Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

## C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to transfer this case to another district. The purpose of the court's

Case 5:24-cv-00368-MAD-ML   Document 6   Filed 06/14/24   Page 35 of 38

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

### III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

 **\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved

in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F. 2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon

Pourzancakil v. Humphry, Not Reported in F.Supp. (1995)

Case 5:24-cv-00368-MAD-ML   Document 6   Filed 06/14/24   Page 36 of 38

which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics. [9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (*per curiam*) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

CONCLUSION

**\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740(1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied. However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Case 5:24-cv-00368-MAD-ML   Document 6   Filed 06/14/24   Page 37 of 38

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

## Footnotes

1   Names in the caption are spelled to reflect plaintiff's complaint.

2   Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3   Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4   The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5   The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6   We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under 28 U.S.C. § 1332.

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

Case 5:24-cv-00368-MAD-ML    Document 6    Filed 06/14/24    Page 38 of 38

7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8    Former Supreme Court Justice Harry A. Blackmun.

9    We note also that plaintiff has not requested leave to amend in this action.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.